Dear Mayor Clark:
You have submitted questions to this office concerning the proper procedures to be followed when an alderman resigns from office.
R.S. 18:652 through 18:654 provide the method for legally resigning a public office. These statutes provide, in pertinent part:
Section 652. Retirements and Resignations
 (A) Except for members of the legislature and the congress, all notices of retirements or resignations of elected officials shall be filed with the secretary of state. Notices of retirements and resignations of members of the legislature shall be filed with the presiding officer of the house of the legislature to which the member of the legislature was elected.
 (B) A notice of retirement or resignation shall be in writing, shall be dated, may specify a prospective date on which the retirement or resignation is to be effective, and shall be signed by the official and duly acknowledged by him before an officer authorized to administer oaths.
 Section 653. Transmission of notices of retirements and resignations
 The secretary of state shall immediately transmit notice of retirements or resignations filed with him to the authority required by law to make the appointment to fill the vacancy and to the authority required by law to call the election to fill the vacancy, if said authority is not the same as the authority required to make the *Page 2 
appointment.
 Section 654. Effect of Filing of Resignations
 (A) Except for members of the legislature, a notice of retirement or resignation shall not be effective until the original notice of retirement or resignation is received by the secretary of state and shall become irrevocable upon such receipt by the secretary of state.
 (B) A notice of retirement or resignation of a member of the legislature shall become irrevocable upon receipt by the presiding officer of the house of the legislature to which the member was elected.
The facts related in this matter reflect that two members of the board of aldermen submitted letters of resignation to the Secretary of State in accordance with R.S. 18:652. Both aldermen specified a prospective date of January 5, 2008 as the effective date of resignation, which is permitted by the language of R.S. 18:652(B). The Secretary of State transmitted notice of these resignations to the board of aldermen in accordance with R.S. 18:653.
R.S. 18:602(A) requires a governing authority to appoint a person to fill a vacancy in the office of alderman within ten days of the vacancy. In accord with the statute, the board of aldermen of Walker met and made appointments to fill the vacancies on January 14, 2008, within ten days of January 5, 2008, the effective date of both resignations.
Both resigning aldermen participated at the January 14, 2008 meeting and voted on their successors. This vote is in accord with R.S.42:2, requiring public officers to continue to discharge their duties until their successors are inducted into office. R.S. 42:2 states:
 Every public officer in this state except in case of impeachment or suspension, shall continue to discharge the duties of his office until his successor is inducted into office.
This office has interpreted the word "inducted" used in R.S. 42:2 to mean the following:
 You have also asked that we define the word "inducted" as that term is used in La.R.S. 42:2. It is our opinion that the word "inducted" as used in La.R.S. 42:2
means to have satisfied all requirements established by law for the particular office in question, i.e. receipt of the commission, taking the oath of office prescribed *Page 3 
by law, and giving bond, where required, and filing the same in the proper office in the manner required by law (See La.R.S. 42:141) for that particular office. See Attorney General Opinion 80-1605, copy attached.
R.S. 42:141 is entitled "time limitation on oath and bond; failure to comply" and states:
 § 141. Time limitation on oath and bond; failure to comply
 A. Each public officer, within thirty days after receipt of his commission or within thirty days after receipt of his commission certificate, whichever is later, shall take the oath of office prescribed by law, and give bond, when required, and file the same in the proper office in the manner required by law.
 B. Subject to the time limitation set forth in Subsection A of this Section, a public officer may take his oath of office at any time after he receives his commission or commission certificate. An oath taken prior to the date shown on the commission shall be deemed to have been taken on and shall be effective on and after the date on which the term of office for which the oath is taken commences. In cases where the office is one for which no date for term of office is set, an oath taken prior to the date on the commission shall be deemed to have been taken on and shall be effective on and after the date on the commission.
 C. Failure to comply with the requirements of this Section shall create a vacancy in the office, and the vacancy shall be filled in accordance with law as in other cases of vacancy.
In this instance the board of aldermen appointed two new aldermen at the meeting held January 14, 2008. The oaths of office were administered to the new officers by the town attorney, and the new officers were seated. The minutes reflect the new officers voted on an appointment to fill a vacancy on the municipal fire district board. The meeting was then adjourned.
Concerns have arisen over the validity of the actions of the newly appointed aldermen, primarily because the resigning board members voted for their successors' appointment. These concerns are without merit, as the resigning board members were acting in accordance with R.S. 42:2.
The new aldermen were appointed to fill the vacancies and immediately seated without waiting to receive their commissions from the Secretary of State as contemplated by R.S. 42:141. However, we cannot say that this defect alone *Page 4 
invalidates the votes given by these new officers at the January 14, 2008 meeting.
Louisiana jurisprudence has acknowledged the principle of "officer defacto". A de facto officer is defined as "one who is in possession of or who exercises the duties of an office under color of a known and valid appointment or election, but where he failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like." State v. Hargis, 154 So. 628 (La. 1934).
The jurisprudence relies on this theory mainly for reasons of public policy. If the acts of de facto officers were adjudged invalid, the persons receiving the brunt of any negative repercussions would be third parties and the general public.
Therefore, acts by de facto officers are held to be valid until the officer's title to office is adjudged insufficient. State v. Johnson,192 So.2d 135 (La. 1966). Until then, the officer's acts are "clothed with the same validity as the acts of de jure officers" and may not be collaterally attacked or inquired into by third persons. See Attorney General Opinion 94-520, copy attached.
While strict compliance with R.S. 42:141 requires that a new officer take his oath of office "within thirty days after receipt of his commission or within thirty days after receipt of his commission certificate, whichever is later", the statute does contemplate an earlier oath, as R.S. 42:141 further states that "an oath taken prior to the date shown on the commission shall be deemed to have been taken on and shall be effective on and after the date on which the term of office for which the oath is taken commences".
In order to avoid any ambiguity, we suggest that after these new officers be re-sworn after receipt of their commissions, in accordance with R.S. 42:141. Thereafter, we suggest that the actions of the new members taken at the January 14, 2008 meeting be acknowledged and ratified by the board.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L KILPATRIOK
 ASSISTANT ATTORNEY GENERAL
 KLK:arg
OPINION NUMBER 80-1605 Mr. Gordon Robertson, Jr. Attorney General of Louisiana — Opinion. June 5, 1981. *Page 1 
RETIREMENT — State Employee — 92-A-2(g) La.R.S. 42:570.2; 42:2; 42:141
OFFICERS — 77, 77-OATH OF OFFICE — 75-La.R.S. 42:2; 42:141
Employee must pay both employee and employer contributions when purchasing ser vice credit pursuant to La.R.S. 42:570.2; employer may not pay employer's share.
The word "inducted" as used in R.S. 42:2 means to have satisfied all requirements established by law for the particular office in question, as set forth in R.S. 42:141.
Mr. Gordon Robertson, Jr. Legislative Field Auditor V Post Office Box 44397 Baton Rouge, LA 70804
WILLIAM J. GUSTE, JR., ATTORNEY GENERAL.
Dear Mr. Robertson:
You have requested our opinion regarding Act 526 of 1979 as it enacted La.R.S. 42:570.2. That statute allows members of the Louisiana State Employees' Retirement System who have rendered service which was classified as job appointment or emergency appointment to receive credit in the System for not more than two years of such service. The member is required to make application for such service and to furnish the System's Board of Trustees with a detailed statement of all service for which credit is claimed. The statute continues to state that in addition,
 ". . . the member shall pay into the system a sum equal to the employee and employer contributions, at the current rate, based on the members' current base pay, plus compound interest at the rate of five percent per annum from the date or dates of service until paid. Such contributions shall be paid in one lump sum, and no credit shall be awarded until payment in full has been received by the system." (Emphasis added.)
 The questions you have asked are as follows:
 "1. Does the fact that the act states that `the member shall pay . . .' preclude the member's current employer from paying the employer's share?
 2. If the act does not preclude the employer from contributing, is it necessary that the payment of the employer's share by the employer be formally approved by the governing body of the employee?" *Page 2 
In answer to your first question, it is our opinion that, because of the use of the mandatory language ("the member shall") and the requirement that the payment be made in one lump sum, the member's employer, either former or current, is precluded from paying the employer's share; the member himself must pay both the employee and employer contribution.
Regarding your second question, because of our opinion stated above, such question is moot.
You have also asked that we define the word "inducted" as that term is used in La.R.S. 42:2. It is our opinion that the word "inducted" as used in La.R.S. 42:2 means to have satisfied all requirements established by law for the particular office in question, i.e. receipt of the commission, taking the oath of office prescribed by law, and giving bond, where required, and filing the same in the proper office in the manner required by law (See La.R.S. 42:141) for that particular office.
We hope this information will be of assistance to you. If there are any other questions, please call me.
 Sincerely yours,
 WILLIAM J. GUSTE, JR.
 ATTORNEY GENERAL
 By
 WILLIAM C. TOADVIN
 Staff Attorney
 WCT:eb